**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LILLIAN E. MINOR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:07-CV-915-G** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Brief in Support of Plaintiff's Motion for Summary Judgment*, filed November 21, 2007; *Commissioner's Motion for Summary Judgment*, filed January 16, 2008; and *Plaintiff's Reply Brief*, filed March 14, 2008. Having reviewed the evidence of the parties in connection with the pleadings, the Court recommends that Plaintiff's motion be **DENIED**, Defendant's motion be **GRANTED**, and the final decision of the Commissioner be **AFFIRMED**.

## I. BACKGROUND[1]

### A. Procedural History

Lillian Minor ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. Plaintiff filed an

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

- 1 -

application for supplemental security income (SSI) and disability insurance benefits (DIB) under Titles XIV and II, respectively, of the Social Security Act on November 1, 2004. (Tr. at 83-87, 344-46). Plaintiff claimed to be disabled since December 30, 2003, due to back problems, arthritis, problems in her right hand, and residuals from surgery on her right knee, left shoulder, and lower back. (Tr. at 83, 116-17, 344). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 37, 45, 347-348). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 49). A hearing, at which Plaintiff personally appeared and testified, was held on July 7, 2006. (Tr. at 354-385). On July 26, 2006, the ALJ issued her decision finding Plaintiff not disabled. (Tr. at 14-24). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised did not provide a basis for changing the ALJ's decision. (Tr. at 6-8). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 6). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on May 22, 2007.

**B.    Factual History**

**1.    Age, Education, and Work Experience**

Plaintiff was born on January 7, 1957. (Tr. at 344). She has a ninth grade education. (Tr. at 239, 364). She previously has worked as a nurse's aide, home health care attendant, fast food worker, apartment helper, and baby sitter. (Tr. at 359-370). Plaintiff last worked on December 30, 2003. (Tr. at 359).

**2.    Medical Evidence**

In 1998, Plaintiff injured her wrist while working at Taco Bell, which resulted in pain in her right forearm. (Tr. at 362). Since then, Plaintiff has had three surgeries of her right forearm, and

surgery of her right wrist, back, and right knee. (Tr. at 162, 363). She had carpal tunnel release on the right hand in 1995, fusion of the metacarpophalangeal joint of the right thumb, and removal of a disc after she injured her back in 1989. (Tr. at 148). In 1970, Plaintiff dislocated the patella in her right knee. *Id.* In October of 2003, Plaintiff was diagnosed with osteoarthritis of the right knee at John Peter Smith Hospital in Fort Worth, Texas. (Tr. at 297). An x-ray was taken which showed degenerative osteoarthritis with an abnormal tibial plateau. (Tr. at 302). She then began taking Celebrex, a nonsteroidal anti-inflammatory drug ("NSAID") indicated for the treatment of osteoarthrtis. (Tr. at 297); *see* Physicians' Desk Reference, 2985-2986 (55th Ed. 2001). Plaintiff did not have a regular physician. (Tr. at 178).

On May 25, 2004, Dr. Arlan P. Larson, M.D. examined Plaintiff. (Tr. at 148-50). Dr. Larson found Plaintiff to have chronic pain along the radial side of the forearm of the right and along the dorsal right thumb and index finger. (Tr. at 149). On movement examination, Plaintiff could toe walk, heel walk, tandem walk, and hop. *Id.* Circumference of the left knee was 14 inches, the right knee was 15 inches with some swelling, and Plaintiff could squat only 50 percent. *Id.* Plaintiff had normal motion of the left knee, but limitation of motion of the right knee joint secondary to an injury, weakness of the muscle in general, and limitation to 70 degrees. (Tr. at 149-150).

On April 13, 2004, Dr. John H. Durfor, M.D., a state agency medical consultant ("SAMC") reviewed Plaintiff's medical files and found that she could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for a total of six hours and sit for a total of six hours in an eight-hour work day. (Tr. at 154, 158). Plaintiff had occasional limitations in climbing, balancing, stooping, kneeling, crouching and crawling. (Tr. at 155). Dr. Durfor further noted Plaintiff was limited in ability to reach in all directions, handling, fingering and feeling. (Tr. at 156). Plaintiff

had no visual, communicative or environmental limitations. (Tr. at 156-157).

On December 21, 2004, Dr. Ingrid Zasterova, M.D., examined Plaintiff. (Tr. at 161-164). Dr. Zasterova found Plaintiff to have free range of motion of all joints with the exception of the metacarpophalangeal joint of the right thumb. (Tr. at 163). Dr. Zasterova also found both knees to have 3+ crepitus, "especially the right one," but no deformities were evident. *Id.* Muscle strength was 5/5 in all four extremities, and grip was 3/5 on the right and 5/5 on the left. *Id.* Plaintiff was able to get on and off the examining table with no great difficulties. *Id.* She had a normal station and gait, could walk on toes, heels and tandem, but could squat only 60 degrees and raise herself up unaided. *Id.* Plaintiff was able to move around the room without an assistive device. *Id.* Dr. Zasterova opined that Plaintiff had: (1) status post fusion at L5-S1 with good results; (2) status post arthodesis of the right thumb metacarpophalangeal joint with reduced range of motion and mild palpatory tenderness; (3) carpal tunnel syndrome release on the right with excellent results; and (4) suspected artheorarthritis in the right knee more than the left. (Tr. at 163-64). Dr. Zasterova opined that Plaintiff could sit for longer than 2 hours, stand 5-30 minutes, walk 2-5 blocks, lift 5-20 pounds and handle objects with fine finger control better with her left hand than the right. *Id.*

On January 16, 2005, Dr. Robert Day, M.D., x-rayed Plaintiff's back. (Tr. at 190). Dr. Day reported mild degenerative changes but no significant abnormality in Plaintiff's thoracic spine. Dr. Day found the changes in Plaintiff's spine to be consistent with degenerative disc disease, with the added possibility of mild disc space narrowing in the upper and midthoracic spine. *Id.*

On January 28, 2005, Dr. Thomas Bronaugh, M.D., examined Plaintiff and diagnosed her with uncontrolled hypertension. (Tr. at 173).

On July 10, 2005, Dr. Gerald T. Bell, M.D, a SAMC, reviewed Plaintiff's medical evidence

and found that she had a limited manipulative ability in her right hand to handle, finger, and feel, but no limitations on her ability to reach in all directions, including overhead. (Tr. at 200). Dr. Bell further found that Dr. Zasterova's conclusions of standing and walking were not supported by her own objective findings. (Tr. at 203). Dr. Bell found that Plaintiff's statements of limitations were supported by medical and other evidence, but that her impairment was not disabling. (Tr. at 204).

On August 10, 2005, Plaintiff received care from the Community Women's Healthcare Clinic at Parkland Hospital. (Tr. at 323-325). Plaintiff reported bilateral knee pain which felt hot and "like needles." (Tr. at 323). Dr. Mary Helen Rivero, M.D., prescribed Relafen for Plaintiff's knee pain and noted that her hypertension was uncontrolled. (Tr. at 324). One month later, Plaintiff returned to the Women's Clinic for a hypertension check-up and a pap smear; she made no mention of any symptoms or complaints of knee problems or pain. (*See* Tr. at 312-316).

On June 7, 2006, Plaintiff visited the DeHaro Saldivar Clinic of Parkland Hospital system for complaints of throbbing knee pain, especially when walking. (Tr. at 341).

### 3.    Hearing Testimony

A hearing was held before the ALJ on July 7, 2006. (Tr. at 356). Plaintiff was represented by counsel at the hearing. (Tr. at 356).

#### a.    *Plaintiff's Testimony*

Plaintiff testified that she was 49 years old and had a ninth grade education.   (Tr. at 358). She stated she did not obtain a GED certification and had not received any kind of special job training. (Tr. at 364, 369). At the hearing, Plaintiff confirmed she had worked in fast food, in home health care, as an apartment leasing agent, and as a baby sitter. (Tr. at 359-60, 364, 370).

Plaintiff alleged she first became disabled on December 30, 2003, when she had surgery on

her wrist after sustaining injuries at her fast food job. (Tr. at 359). Plaintiff stated that even with surgery, her hand had not gotten better. *Id*. Initially, Plaintiff received workers' compensation after she injured her hand. (Tr. at 361-362). However, her doctor stopped seeing her when her workers' compensation no longer covered her medical care. (Tr. at 375). Plaintiff had a total of three surgeries on her hand, the most recent occurring in 1999. (Tr. at 363). Plaintiff stated that she attempted to go back to work but was unable to do so since she could not hold anything in her hand. *Id*. Plaintiff stated that the only job she had been able to perform since her injury was babysitting. *Id*. During this time, Plaintiff unsuccessfully attempted to earn her GED. *Id*. Plaintiff told the ALJ that she could write using her injured thumb, but that was "about it." (Tr. at 365). Plaintiff claimed she could not pick things up with her right thumb and that she had a further restriction due to a broken finger on her right hand. *Id*.

As for personal grooming, Plaintiff testified she was able to sometimes dress and bathe herself. *Id*. She claimed an inability to prepare her own meals, since she had burnt her hand and did not have feeling in that hand at times. (Tr. at 366). Plaintiff stated that she could microwave but could not cook. *Id*. Additionally, Plaintiff stated she could not do any housework or laundry. (Tr. at 367). Plaintiff stated that she drives sometimes, but testified that "because of my knee and also the medication I'm on, it makes me drowsy." *Id*. Plaintiff stated she did not go shopping, including grocery shopping, because of the strain it placed on her knees. *Id*.

Plaintiff claimed an ability to walk for "maybe a block" and an inability to sit for a long time because of getting stiff. (Tr. at 368). Plaintiff stated she could sit for about 20 minutes before needing to stretch, and could stand for about 15 minutes. The Plaintiff testified to currently being on medications for hypertension, pain and osteoarthritis, and that her osteoarthritis was in both her

hand and knees. (Tr. at 367-368). Plaintiff reported that her knee pain began in the mid-90's and had become much more significant over the last few years. (Tr. at 371).

On cross examination, Plaintiff testified that her doctors had prescribed metoprolol, lisinopril, nacula, nabumetone, metronidazole and ranitidine. (Tr. at 372-374). Plaintiff stated that these medications helped with the pain in her knee but not the swelling. (Tr. at 374). Plaintiff stated she missed taking these medications several times because of her stress. *Id*. According to her testimony, doctors discussed with her the possibility of getting a knee replacement. (Tr. at 375).

### b. *Vocational Expert Testimony*

Sally Mickel, a vocational expert ("VE"), testified at the hearing that Plaintiff's past relevant work experience included (1) nurses aide (medium, SVP of 4, semiskilled work); (2) home health attendant (medium, SVP of 3, semiskilled); (3) fast food worker (light, SVP of 2, unskilled); and most recently, (4) baby sitting (medium, SVP of 3, semiskilled). (Tr. at 379-380). The VE did not classify Plaintiff's jobs in telemarketing or apartment leasing because her telemarketing job was less than 3 months, and she did not perform all the tasks associated with being an apartment lease agent. *Id*.

Besides her testimony describing Plaintiff's past jobs, the VE answered a hypothetical from the ALJ as to whether there would be work available for "an individual, who is limited to lifting 10 pounds frequently, 20 pounds occasionally, limited handling, fingering and feeling of one hand and occasional kneeling, crawling, nor more that occasional kneeling or crawling." (Tr. at 381). The VE testified that such an individual could perform the jobs of furniture rental consultant, usher, and investigator/dealer, of which there were 125,000, 60,000, and 50,000 positions, respectively, in the national economy. (Tr. at 381-382). The VE further testified that these jobs took into consideration

the claimant's age, limited education, and work experience. (Tr. at 383). The VE stated that these jobs could not be performed by a person who was limited to four hours of standing or walking in an eight-hour day. (Tr. at 382-83). Further, none of the skills learned in previous occupations would transfer to any sedentary semiskilled or skilled work. *Id.*

C.     **ALJ's Findings**

The ALJ issued her decision denying benefits on July 26, 2006. (Tr. at 17-24). In her findings, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability, December 30, 2003. (Tr. at 18; 23, ¶2). The ALJ found that Plaintiff had the severe impairments of arthrodesis of right thumb metacarpophalangeal joint with reduced range of motion, and bilateral osteoarthritic knees. (Tr. at 18; 23 ¶3). However, the ALJ concluded that these medically determinable impairments did not meet or equal a listed impairment. (Tr. at 19; 23, ¶4).

Although Plaintiff had some work-related limitations, the ALJ was not persuaded that the evidence of record substantiated the degree of pain and functional limitation alleged. (Tr. at 19; 23, ¶5). The ALJ noted that in the 2 ½ years following her 2000 surgery on her right wrist and hand, Plaintiff pursued sporadic medical care for intermittent residual swelling in the distal branch of her right hand. (Tr. at 19). The ALJ also referenced a 2004 consultative physical examination performed by Dr. Arlan P. Larson which found pain and numbness along Plaintiff's right forearm, thumb and index finger, as well as residual knee pain and reduced flexion, but no muscle atrophy. *Id.* Dr. Larson's report also noted slightly reduced sensation in Plaintiff's right wrist, thumb, and index finger, and reduced upper extremity and grip strength of 3/5. *Id.* The ALJ concluded that Dr. Larson's findings, along with Plaintiff's treatment history between October 2002 and December

2003 did not support a conclusion that Plaintiff was precluded from working on her alleged onset date of disability. (Tr. at 20).

The ALJ also considered Dr. Zasterova's examination. She did not assign controlling weight to Dr. Zaserova's findings because the limitations imposed by Dr. Zasterova were inconsistent with Plaintiff's medical history, which showed no medical care for knee pain though December 2004. *Id.* The ALJ concluded that Dr. Zasterova's proposed RFC, which would be consistent with a full range of sedentary work, negated a finding that Plaintiff was precluded from working prior to her onset date of disability. *Id.* The ALJ also noted that although Plaintiff pursued more frequent medical care during 2005, progress notes did not indicate her overall physical strength had significantly declined. *Id.* Further, treatment records from 2006 showed that Plaintiff had not regularly used pain medication or required aggressive medical care. *Id.* This, in combination with Plaintiff's failure to mention knee or hand pain in 2005, led the ALJ to find that Plaintiff's ability to work was not impacted by back pain for the twelve months required of a disability. *Id.*

The ALJ found that Plaintiff retained the RFC to frequently lift/carry 10 pounds, occasionally lift/carry 20 pounds, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The ALJ also found that Plaintiff's ability to handle, finger, and feel was limited and that she could only occasionally kneel or crawl. (Tr. at 21; 23,¶6). The ALJ found that although Plaintiff could not perform any of her past relevant work and had no transferrable skills, she retained the RFC to perform a significant range of light work. (Tr. at 21-22; 23-24, ¶¶7, 10, 11). Based on the VE's testimony, the ALJ determined that Plaintiff could work as a furniture rental person, an usher, and as an investigator/dealer, all of which existed in substantial numbers in the state and national economies. (Tr. at 22-23; 24, ¶12). As a result, the ALJ determined that Plaintiff was not

disabled, as defined by the Social Security Act, at any time through the date of her decision.  (Tr. at 24, ¶13).

## II.  ANALYSIS

### A.  <u>Legal Standards</u>

#### 1.  Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3).  Substantial evidence is defined as more than a scintilla, but less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program.  *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985).  Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.  *See id*.  Thus, the

Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

## 2.    Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.    An individual who does not have a "severe impairment" will not be found to be disabled.

3.    An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.    If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.    If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove disability.

*Leggett*, 67 F.3d at 564.  The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id*.  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  The burden of proof then returns to the claimant to rebut the Commissioner's showing.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.      Issues for Review**

Plaintiff presents three issues for determination:

(1)      The substantial evidence does not support the Commissioner's determination of the Plaintiff's residual functioning capacity.

(2)      The substantial evidence does not support the Commissioner's determination the Plaintiff can perform other work in the national economy.

(3)      The Commissioner erred in finding the plaintiff not disabled.

(Pl.'s Br. at 1).

**C.      Issue One: Residual Functioning Capacity**

Plaintiff first contends that substantial evidence does not support the Commissioner's determination that Plaintiff can perform light work because the RFC does not address all limitations associated with her impairments.  (Pl.'s Br. at 7).  Plaintiff raises two specific arguments within this issue for review.  She contends that the ALJ failed to obtain the testimony of a medical expert

("ME") and that the ALJ improperly considered her failure to take prescription medication. (*See* Pl.'s Br. at 7-10).

### 1. Failure to Consult a Medical Expert

Plaintiff initially contends that the ALJ improperly assessed the limitations associated with her osteoarthritis because the ALJ did not consult a ME at the administrative hearing. As a result, Plaintiff contends that ALJ breached her duty to fully and fairly develop the record. (Pl.'s Br. at 8).

Plaintiff first asserts that the ALJ erred by failing to call a ME to testify at the administrative hearing. (Pl.'s Br. at 8). Contrary to this assertion, an ALJ is not required to obtain the testimony of a medical expert at hearing. 20 C.F.R. § 404.1527(f)(2)(iii) ("[ALJs] *may* also ask for and consider opinions from medical experts.") (emphasis added). *See also Madis v. Massanari*, 2001 WL 1485699, *1 (5th Cir. 2001) (noting that although an ALJ may ask for the opinion of a medical expert at a hearing, it is not mandatory); *Bridges v. Commissioner*, 278 F.Supp.2d 797, 804 (N.D. Tex. 2003) (same). Because the decision to consult a ME is discretionary, the ALJ's decision not to consult one by itself did not constitute error.

Plaintiff next asserts that the ALJ's failure to consult a ME breached her duty to fully and fairly develop the record. (Pl.'s Br. at 8-9). The ALJ has a duty to fully and fairly develop the facts relevant to a claim for benefits. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Failure to develop an adequate record is not per se grounds for reversal. *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). In order to obtain reversal, a claimant must show that the ALJ "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142. Plaintiff appears to assert that the alleged prejudice is that had the ALJ consulted a ME, she would not have drawn inappropriate medical inferences regarding her knee pain. (*See* Pl.'s Br. at 8-9).

In this case, the ALJ had the benefit of a medical record that included numerous treatment records and opinions as well as the results of Dr. Larson's consultative examination. (Tr. at 143-341). In her written decision finding Plaintiff not disabled, the ALJ cited to specific instances where Plaintiff's examining doctors found no significant limitations from her osteoarthritic knees. (Tr. at 19-20). For example, the ALJ considered Dr. Larson's findings which reported residual right knee pain, slightly reduced or 70 degrees flexion in the right knee, mild swelling, but no atrophy. (Tr. at 19, 149-50). The ALJ also considered the reports of Dr. Zasterova, which found Plaintiff had free range of motion in all joints, 3+ crepitus in both knees, intact gait and station, full muscle strength in the lower extremities with tenderness identified only over the medial line, and squatting limited to 60 degrees. (Tr. at 20, 163). The ALJ also noted Plaintiff's lack of medical care for knee pain through December 2004 and that she had reported only one instance of exacerbated knee pain during 2005, which she rated as six on the pain scale. (Tr. at 20-21, 326-34). The ALJ also found that medical records from DeHaro Saldivar Clinic showed that although Plaintiff had developed right-sided knee pain rated as a seven on the pain scale, this did not suggest a significant decline in Plaintiff's overall physical health. (Tr. at 21, 341). The ALJ concluded that Plaintiff's knee pain had actually remained stable despite her limited use of prescription medication. (Tr. at 21). Ultimately, based on these findings, the ALJ found Plaintiff's knee pain did not preclude her from performing the demands of light work. *Id*.

The Court finds that substantial evidence in the record supports the ALJ's assessment of Plaintiff's knee pain. Plaintiff has not shown that the ALJ would have adduced other evidence about Plaintiff's knee pain had she consulted a ME, and she therefore has not shown prejudice. *Carey*, 230 F.3d at 142. Essentially, Plaintiff believes that the ALJ should have arrived at a different result after

reviewing the medical evidence and consulting a ME, but reweighing the evidence or substituting the Court's judgment for that of the ALJ is beyond the scope of judicial review. *Greenspan*, 38 F.3d at 236. The Court is limited to examining the ALJ's decision for substantial evidence and the proper application of legal standards. *Id.* In this case, the ALJ applied the proper legal standards and cited to specific evidence in the medical record to support her finding that Plaintiff's knee pain was not disabling. The ALJ therefore did not err in failing to consult a ME because the record was already fully and fairly developed.[2]

## 2. Failure to Take Prescribed Medication

Plaintiff also argues that the RFC does not address all her limitations because the ALJ improperly considered the irregular use of prescription medication to control pain. (Pl.'s Br. at 9). According to Plaintiff, this is error because therapy for osteoarthritis is palliative and Plaintiff's use of over-the-counter and prescription non-steroidal anti-inflammatory drugs (NSAIDs) had been ineffective.

In order to receive benefits, Social Security claimants must follow treatment prescribed by a physician; a failure to do so, without good reason, will lead to a finding that the claimant is not disabled. 20 C.F.R. § 404.1530 (a) and (b). Failure to seek treatment is relevant in determining whether disability exists and is an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Impairments that can be remedied or treated by medication will not be considered a disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). The ALJ is required to make

---

[2] Plaintiff appears to argue that the ALJ did not consider the combined effects of her obesity on her RFC. (Pl.'s Br. at 9). To the extent Plaintiff seeks to present this as a separate issue, the Court notes that this was not briefed as a separate issue as required by this Court's Scheduling Order issued on August 7, 2007, and is therefore waived. (Docket # 19). Nevertheless, the Court notes that the medical record cited by Plaintiff in support of her allegation of obesity does not support a diagnosis of obesity because no treating or examining doctor diagnosed Plaintiff as obese. (*See* Tr. at 143-341; *see also* Tr. at 23, ¶3 (obesity not listed as a severe impairment)).

affirmative findings regarding a claimant's subjective complaints of pain, and such findings should be upheld if supported by substantial evidence. *Jenkins v. Astrue*, 250 Fed. Appx. 645, 647 (5th Cir. 2007). But when a claimant cannot afford prescribed treatment or medicine and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law. *Wingo v. Bowen*, 852 F.2d 827, 831 (5th Cir. 1988).

Although Plaintiff's worker's compensation stopped paying for care under Dr. Zehr, she continued to seek sporadic treatment from various sources for her medical impairments. In October 2003, she was prescribed Celebrex (a NSAID) to treat her osteoarthritis. (Tr. at 297). She also was prescribed Motrin and later Relafen (both NSAIDs) for her knee and wrist pain. (Tr. at 324, 334). There is no evidence that Plaintiff could not afford medical treatment or prescription medications once she stopped receiving worker's compensation because she received medical treatment over the course of several years for osteoarthritis, back and chest pain, symptoms related to elevated blood pressure, right wrist pain, and reflux. (Tr. at 169-172, 185-191, 326-338, 375). Additionally, Plaintiff presented no evidence that she exhausted options for free or low-cost treatment or medications. *See Wingo*, 852 F.2d at 831. The ALJ therefore properly considered Plaintiff's failure to take prescription medications when she evaluated Plaintiff's disability.

**D.    Issue Two: Other Work in the National Economy**

The second issue Plaintiff presents for review is that substantial evidence does not support the finding that she could perform other work in the national economy. (Pl.'s Br. at 10-11). Specifically, Plaintiff argues that the ALJ's hypothetical question to the VE did not account for Plaintiff's physical limitations. (Pl.'s Br. at 10-13).

To establish that work exists for a claimant at steps 4 and 5 of the sequential disability

determination process, the ALJ relies on the medical-vocational guidelines or the testimony of a VE in response to a hypothetical question. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A hypothetical question posed by an ALJ to a VE must reasonably incorporate all the claimant's disabilities recognized by the ALJ and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question. *Id*. at 436. A claimant's failure to point out deficiencies in a hypothetical question does not "automatically salvage that hypothetical as a proper basis for a determination of non-disability." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). If, in making a disability determination, the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden of proof to show that despite an impairment, a claimant could perform available work. *Id*. at 708.

In response to a hypothetical question involving an individual with no limitations on the ability to walk or stand but with a limited ability to use her hands, the VE testified that such an individual could perform several jobs that existed in significant numbers in the state and national economies. (Tr. at 381). When the ALJ imposed a limitation of standing and walking of four hours per day, the VE testified that this limitation eroded the job base. (Tr. at 382-83). Plaintiff contends that the VE's response to the second hypothetical question shows that she cannot do other work, (Pl.'s Br. at 11), but this argument is undermined by the fact that the RFC, as determined by the ALJ, did not include the additional limitations on the ability to stand and walk. (Tr. at 23, ¶6). In other words, because the ALJ found that substantial evidence did not support Plaintiff's allegations of a limited ability to stand and walk, the RFC included no such limitation. As such, the first hypothetical question posed to the VE reasonably accounted for all of Plaintiff's limitations. Since this first question was not defective, the ALJ did not err in relying on the VE's response regarding

Plaintiff's ability to perform other work. *Boyd*, 239 F.3d at 708.

**E.     Issue Three: Whether the Commissioner Erred**

Plaintiff's third issue for review essentially rehashes her first two arguments that the ALJ erred in finding her not disabled. (Pl.'s Br. at 12).

Under Step 5 of the sequential disability determination process, after the ALJ shows that a claimant can perform other work, the burden of proof returns to the claimant to rebut this showing. *Masterson*, 309 F.3d at 272. Here, the ALJ met her burden to shown that despite Plaintiff's severe impairments, she could perform several jobs that existed in significant numbers in the national economy. (Tr. at 381-382). Plaintiff did not rebut this determination. Rather, she relied on limitations not supported by the medical evidence to show that she cannot perform other work. As discussed in the preceding sections, substantial evidence supported the ALJ's RFC assessment, and the RFC shows that Plaintiff can perform other work.

Since the ALJ found that Plaintiff could perform other work, she properly found that Plaintiff was not under a "disability" as defined in the Social Security Act, at any time through the date of her decision. 20 C.F.R. §§ 404.1520 (g) and 416.920 (g).

### III.  RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, *Commissioner's Motion for Summary Judgment* be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

**SO RECOMMENDED**, on this 30th day of June, 2008.

**IRMA CARRILLO RAMIREZ**
**UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE